UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

F. HARVEY WHITTEMORE; ANNETTE
WHITTEMORE; and DOES I-X, inclusive,

        Plaintiffs,

v.

THOMAS A. SEENO, an individual; ALBERT
D. SEENO, JR., an individual; ALBERT D.
SEENO, III, an individaul; and DOES I-X,
inclusive,

        Defendants.

3:12-CV-00063-LRH-WGC

ORDER

      Before the court is Defendants Thomas A. Seeno; Albert D. Seeno, Jr.; and Albert D. Seeno, III's Motion to Dismiss or Stay Proceedings (#3[1]) in deference to a parallel state court action under the *Younger* and *Colorado River* doctrines. Plaintiffs F. Harvey Whittemore and Annette Whittemore filed an opposition (#6), and the Seenos replied (#7). With the court's permission, the Seenos also filed a supplemental memorandum (#25) addressing the Whittemores' newly filed Answer and Counterclaim in the state court action, the Whittemores filed a response (#26), and the Seenos replied (#27). On August 15, 2012, the court heard oral arguments on the motion and issued a preliminary ruling that it would stay this federal action in deference to the parallel action in state court under the *Colorado River* doctrine,

---

[1] Refers to the court's docket entry number.

with a written order to follow.[2] (*See* Minutes (#35), p. 2; Transcript (#36), pp. 78-93.) The court now confirms that ruling.

I.  **Facts and Procedural History**

The events at issue in this action and the state court action span a period roughly from 2004 to the present and involve the joint ownership and management of Wingfield Nevada Group ("WNG") and other entities and properties by Harvey Whittemore and brothers Thomas Seeno and Albert Seeno, Jr. Initially, the partnership was between Whittemore and Thomas Seeno, beginning in 2004 with Thomas Seeno's purchase of a 50% interest in WNG and becoming a joint manager with Whittemore. Albert Seeno, Jr. joined the partnership in 2007 by acquiring a one-third interest, with equal portions coming from his brother and Whittemore. Albert later also assumed the role of joint manager of WNG in 2009. According to Whittemore, at the time Albert was bought into WNG in 2007, the company had a fair market value of between $500 million and $1 billion.

The partnership unraveled beginning in 2010, eventually culminating in these state and federal civil lawsuits. The parties offer vastly different accounts.

According to the Seenos, they began noticing discrepancies in WNG's financial records around May 2010 and began investigating. In September 2010, they confronted Whittemore, who confessed to and disclosed a multitude of acts of misappropriation, embezzlement and breaches of his fiduciary duties to WNG and the Seeno brothers between 2003 and 2010, resulting in tens of millions of dollars in damages to WNG and the Seenos' interests.

According to the Whittemores, WNG was indebted to them for approximately $30 million of investment loans, plus additional amounts, that he put back into WNG after Albert Seeno, Jr. bought in.

---

[2] As the court also indicated in its preliminary ruling, the doctrine of *Younger* abstention is inapplicable. *See Younger v. Harris*, 401 U.S. 37 (1971). The parallel state court action is a civil action between private parties and entities. It is not state-initiated, does not implicate important state interests, and would not be actually or effectively enjoined by this federal action, despite any potential preclusive effect. *See AmerisourceBergen Corp. v. Roden*, 495 F.3d 1143, 1147-51 (9th Cir. 2007); *see also Potrero Hills Landfill, Inc. v. Cnty. of Solano*, 657 F.3d 876, 883-87 (9th Cir. 2011).

Whittemore also borrowed approximately $20 million over time from entities affiliated with Thomas Seeno and provided tax consulting services to the Seeno brothers in 2009 under a compensation agreement. The partnership then broke down after Albert Seeno, Jr. became disgruntled with his investment and falsely accused Whittemore of embezzlement, fraud and other criminal activity. Among other alleged criminal acts, the Seenos threatened Whittemore with serious bodily harm, death and criminal prosecution, had his personal items seized under threats of force, and orchestrated the burglary of the Whittemores' Las Vegas residence. Whittemore also contends he was coerced into transferring assets to WNG and the Seenos, including his ownership interest in WNG, which he values at over $60 million. Whittemore additionally contends that, after offsets between the $30 million debt owed to Whittemore by WNG, the debt Whittemore owes to Thomas Seeno, and any debt owed by the Whittemores on his trade accounts, WNG still owes the Whittemores approximately $10 million to $11 million on the WNG debt alone. Whittemore further contends that he was promised but has never received a full accounting by the Seenos and WNG, that he was promised the opportunity to repurchase his interest in WNG after repaying the debt to Thomas Seeno, and that the Seenos have undertaken actions to intentionally devalue the assets of WNG while claiming fraud by the Whittemores.

In the courts, the Seenos moved first with the filing of their state court lawsuit in Las Vegas on January 27, 2012. (*See* State Complaint (#3-1).) Though under the direction of the Seeno brothers as the controlling stakeholders, the named plaintiffs in the state court action are WNG and two other involved entities, Tuffy Ranch Properties, LLC and The Foothills at Wingfield, LLC. The named defendants are Harvey and Annette Whittemore and others. The First Amended Complaint (#3-2), filed on February 10, 2012, states thirteen claims for relief, ten of which are brought against Harvey Whittemore, and eight of those are WNG claims. The eight WNG claims are for (1) breach of fiduciary duties, (2) fraudulent concealment, (3) civil conspiracy, (4) breach of contract, (5) tortious breach of the implied covenant of good faith and fair dealing, (6) unjust enrichment, (7) conversion, and (8) intentional interference with prospective economic advantage. The other two claims brought against Whittemore are for breach of fiduciary duties as to the Tuffy and Foothills entities. Although no specific damages amount

is stated in compliance with state court rules, the allegations of the complaint reveal that the claims involve tens of millions of dollars in alleged damages based on a multitude of alleged acts of misappropriation, embezzlement and breaches of duties.

Days after the WNG lawsuit was filed in state court, the Whittemores countersued the Seenos individually in this federal court action, filed in Reno on February 1, 2012. (*See* Federal Complaint (#1).) In addition to suing Thomas Seeno and Albert Seeno, Jr., the Whittemores also named as a defendant Albert's son, Albert Seeno, III, as a manager and investor in WNG and certain casino interests along with the Seeno brothers. The federal complaint is generally based on allegations of a conspiracy to defraud the Whittemores and take over WNG, plus related criminal conduct. The Whittemores assert eleven claims for relief, including (1 & 2) federal RICO[3] violations, (3) state anti-racketeering violations, (4) breach of contract, (5) fraud, (6) breach of the implied covenant of good faith and fair dealing, (7) intentional infliction of emotional distress, (8) unjust enrichment, (9) civil conspiracy, (10) conversion, and (11) breach of fiduciary duty. This court's jurisdiction is invoked based on federal question jurisdiction over the two federal RICO claims, plus supplemental jurisdiction over the remaining state law claims.

Regarding damages, the Whittemores' claims are predominantly and principally based on their interest in WNG, which they value at over $60 million. This amount is repeatedly alleged in all but their seventh and eighth causes of action, and in their prayer for relief. They also seek to triple this amount as treble damages under the three racketeering claims, or to double the amount as punitive damages under their fifth, sixth, tenth and eleventh claims. In their fifth claim for fraud, the Whittemores further seek the $30 million that WNG allegedly owes to Whittemore to repay loans, less any amounts still owing to Thomas Seeno and WNG. And in their eighth claim for unjust enrichment, they claim over $500,000 in damages for the tax consulting services provided to the Seenos.

In addition to their claims in this court, on April 27, 2012, the Whittemores also filed counterclaims against WNG, Tuffy and Foothills in the state court action. (*See* Answer and Counterclaim

---

[3] The Racketeer Influenced and Corrupt Organization Act, 18 U.S.C. § 1961 *et seq.*

4

(#25, Ex. A).) Although the defendants (or counter-defendants) differ in name, the Whittemores' underlying allegations are substantially similar and the claims overlap. Their counterclaims are for (1) breach of contract, (2) breach of the implied covenant of good faith and fair dealing, (3) unjust enrichment, (4) contractual indemnity, (5) account stated, (6) accounting and receivership, (7) conversion, and (8) set-off. The Whittemores claim to be owed repayment on the $30 million loan to WNG, over $10 million in other assets transferred, and an accounting and set-off of any amounts owed to WNG.

On May 31, 2012, Judge Gonzalez in the state court action entered an order mandating arbitration of the plaintiffs' first, second, fourth, fifth, sixth, seventh, eleventh, twelfth and thirteenth claims for relief and the Whittemores' counterclaims. The court retained the plaintiffs' third, eighth, ninth and tenth claims for relief.

## II.     Legal Standard

In *Colorado River Water Conservation District v. United States*, 424 U.S. 800 (1976), the Supreme Court held that, even where none of the abstention doctrines applies and concurrent federal jurisdiction exists, dismissal or stay of a federal action in deference to a parallel state court action may be warranted based "on considerations of wise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation." *Id.* at 817 (internal quotation marks, brackets and citation omitted). This is a limited exception to "the virtually unflagging obligation of the federal courts to exercise the jurisdiction given them." *Id.* "Although courts usually avoid duplicative litigation when similar cases are pending in two different *federal* courts, '[g]enerally, as between state and federal courts, the rule is that the pendency of an action in the *state* court is no bar to proceedings concerning the same matter' in a federal court." *R.R. Street & Co. Inc. v. Transport Ins. Co.*, 656 F.3d 966, 974-75 (9th Cir. 2011) (quoting *Colorado River*, 424 U.S. at 817) (alterations in original). Thus, a federal court may stay or dismiss a federal action in deference to concurrent state court proceedings only in exceptional circumstances. *Colorado River*, 424 U.S. at 818; *Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 19 (1983).

///

Application of *Colorado River*'s exceptional circumstances test involves consideration of several factors, including: (1) whether either court has assumed jurisdiction over a *res* or property; (2) inconvenience of the federal forum; (3) avoiding piecemeal litigation; (4) the order in which the concurrent forums obtained jurisdiction; (5) whether federal or state law provides the rule of decision on the merits; (6) whether the state court proceedings are inadequate to protect the federal litigants' rights; and (7) whether exercising jurisdiction would prevent forum shopping. *Holder v. Holder*, 305 F.3d 854, 870 (9th Cir. 2002). The exceptional circumstances test is not "a mechanical checklist," however. *Moses H. Cone*, 460 U.S. at 16. The test "is to be applied in a pragmatic, flexible manner with a view to the realities of the case at hand." *Id.* at 22. "The factors relevant to a given case are subject to a flexible balancing test, in which one factor may be accorded substantially more weight than another depending on the circumstances of the case, and 'with the balance heavily weighted in favor of the exercise of jurisdiction.'" *Holder*, 305 F.3d at 870-71 (quoting *Moses H. Cone*, 460 U.S. at 16). "Only the clearest of justifications will warrant dismissal." *Colorado River*, 424 U.S. at 819. Provided that the district court exercises its discretion under the standard prescribed by the Supreme Court, "the decision whether to defer to the state courts is necessarily left to the discretion of the district court in the first instance." *Moses H. Cone*, 460 U.S. at 19.

### III.    Discussion

As a threshold matter, the court finds that this federal action and the concurrent state court action are substantially similar, such that these actions are within the ambit of the *Colorado River* doctrine. *Colorado River* does not require "exact parallelism"; it is sufficient that the proceedings are "substantially similar," which these actions undoubtedly are. *Nakash v. Marciano*, 882 F.2d 1411, 1416 (9th Cir. 1989). The fact that the named parties and claims involved are not strictly identical is no bar to application of the *Colorado River* doctrine. The court's analysis is not constrained by such formalism, but by the substance of the claims and issues presented and the "realities of the case at hand." *Moses H. Cone*, 460 U.S. at 22. Despite the fact that the state court action is brought in the name of WNG and other related entities, rather than in the Seenos' names personally, the reality is that the actions principally

involve the same nucleus of operative facts and disputes concerning the partnership between Whittemore and the Seeno brothers, these individuals' joint ownership and management of WNG and other entities and properties, and their respective duties, entitlements, obligations and debts. The fact that there is not complete overlap and that the federal action additionally involves claims and issues that are related in history but collateral to those core issues does not alter the court's conclusion.

Giving due consideration to wise judicial administration, the conservation of judicial resources and comprehensive disposition of litigation, the court further finds that exceptional circumstances are clearly present in this case to warrant a stay of this federal action in deference to the parallel state court action. *See Colorado River*, 424 U.S. at 817-18.

By far the most compelling factor in this case is the avoidance of piecemeal litigation. "Piecemeal litigation occurs when different tribunals consider the same issue, thereby duplicating efforts and possibly reaching different results." *Am. Int'l Underwriters, (Philippines), Inc. v. Cont'l Ins. Co.*, 843 F.2d 1253, 1258 (9th Cir. 1988).

This is a massive piece of litigation concerning partnership disputes as to matters going back to 2004, or at least 2007 for the most critical events, and involving the partners' competing interests in a company, WNG, that the Whittemores have valued at between $500 million and $1 billion. Of the two parallel actions, the state court litigation is vastly more comprehensive, particularly with the Whittemores' filing of counterclaims that raise many of the same causes of action, issues and damages that are raised in this federal action. And the state and federal actions are substantively intertwined, not only in that they share the same nucleus of facts and issues, but also in that the claims asserted by the Whittemores on one side and by the Seenos and WNG on the other are diametrically opposed as to the parties' respective duties and obligations—both legal and monetary—as to the same matters, including loans, capital contributions, consulting fees, ownership interests, partnership assets, and other matters. The damages claims presented here involving some $30 million in loans and Whittemore's asserted $60 million ownership interest in WNG are part and parcel of the tens of millions of dollars in damages claims asserted against the Whittemores in the state court action. Essentially, the parties are fighting the same

issues over the same pot in two separate forums. This is not only highly inefficient, but it creates a substantial risk of conflicting results as to huge sums of money. Indeed, not only are the compensatory damages claimed in the tens of millions of dollars, the treble and punitive damages claimed bring those damages to potentially $180 million.

The efforts duplicated by allowing this action to proceed in separate forums would also be substantial, at great expense to limited judicial resources. This is a massive case involving over 100,000 documents, extensive e-discovery that will have to be coordinated by any court involved, approximately sixty witnesses identified by the Whittemores alone, and voluminous depositions that will also have to be coordinated. Considerations of wise judicial administration and resources caution strongly against encumbering two courts with such massive discovery and the struggles that will surely accompany it.

Additional factors also favor, even if more modestly, staying this action in deference to the more comprehensive state action. For instance, the inconvenience of the federal forum has application here for two reasons. First, as expressed in the WNG operating agreement, the parties selected Las Vegas as their choice of forum for disputes between the partners. This was as much Whittemore's choice as it was the Seenos'. Second, although within the same state, the geographical separation between Reno and Las Vegas is significant. At over four hundred miles by car, the distance is greater than that between many states, and air travel is the only effective means by which travel may be efficiently accomplished between the two locations. The inconvenience of simultaneously litigating in both forums is manifest.

The court also notes that the state action has an edge in priority over this federal action. Although the actions were filed only five day apart, relatively more progress has occurred in the state action than in the federal action. *See Moses H. Cone*, 460 U.S. at 21 ("[P]riority should not be measured exclusively by which complaint was filed first, but rather in terms of how much progress has been made in the two actions."). Based on an arbitration clause in the partnership agreement, the state court has already granted the Whittemores' motion to compel arbitration as to several of WNG's claims that concern much of the same factual history and evidence as to damages that might apply in this case.

///

8

1    The source of law factor also weighs in favor of deference to the state court. With the sole
2 exception of the Whittemores' federal RICO claims, every other claim presented is based in state law.
3 Morever, even the Whittemores' federal RICO claims rely in part on state law and could have been
4 brought in state court. It is well established that state courts have concurrent jurisdiction over claims
5 under the federal RICO statute. *See Tafflin v. Levitt*, 493 U.S. 455, 467 (1990) (concluding that 18
6 U.S.C. § 1964(c) does not provide for exclusive federal jurisdiction); *accord Lou v. Belzberg*, 834 F.2d
7 730, 741 (9th Cir. 1987). And the predicate acts of racketeering alleged in the Whittemores' complaint
8 include alleged violations of both federal and state criminal laws. (*See* Federal Complaint (#1), ¶¶ 66-
9 67.) Thus, while "the presence of federal-law issues must always be a major consideration weighing
10 against surrender" of federal jurisdiction, *Moses H. Cone*, 460 U.S. at 25, the existence of concurrent
11 state jurisdiction over the only federal claims at issue here and their partial reliance on state law issues
12 gives the federal law issues in this case much less significance. *See Nakash v. Marciano*, 882 F.2d
13 1411, 1416 (9th Cir. 1989).

14    The sixth factor concerning the state court's adequacy to protect the federal rights at issue is
15 significant only insofar as the state court's *inadequacy* may support the retention of federal jurisdiction.
16 *See Travelers Indemnity Co. v. Madonna*, 914 F.2d 1364, 1370 (9th Cir. 1990) (noting that the Ninth
17 Circuit "has not applied this factor against the exercise of federal jurisdiction, only in favor of it"); *see,*
18 *e.g.*, *Moses H. Cone*, 460 U.S. at 26 ("an important reason against allowing a stay is the probable
19 inadequacy of the state-court proceeding"). Here, the state forum provides complete and adequate
20 protection of the Whittemores' asserted rights under the federal RICO statute given the state court's
21 concurrent jurisdiction over such claims. *See Tafflin*, 493 U.S. at 465 ("we have full faith in the ability of
22 state courts to handle the complexities of civil RICO actions, particularly since many RICO cases involve
23 asserted violations of state law"). This factor therefore does not weigh against the surrender of federal
24 jurisdiction in this case.

25    The remaining factors also have little influence here. While the parties may be fighting over the
26 same ownership interests and moneys, there is no particular *res* or tangible property over which any court

has assumed jurisdiction. And while the Seenos complain of forum shopping, they point to no advantage to be gained by the Whittemores in this court's procedures. These actions were filed virtually simultaneously, and there is "nothing invidious" about a litigant's mere preference for a particular forum, whether federal or state. *Mobil Oil Corp. v. City of Long Beach*, 772 F.2d 534, 542-43 (9th Cir. 1985).

**IV.  Conclusion**

For the reasons stated both here and in open court, particularly the court's overwhelming concern for avoiding piecemeal litigation in this massive case and the wise use of limited judicial resources, the court finds that a stay of this litigation is warranted under the exceptional circumstances test of *Colorado River*.

IT IS THEREFORE ORDERED that the Defendants' Motion to Dismiss or Stay Proceedings (#3) is GRANTED. This action is hereby STAYED pending the resolution of proceedings in state court.

IT IS SO ORDERED.

DATED this 10th day of September, 2012.

_____
LARRY R. HICKS
UNITED STATES DISTRICT JUDGE